This is Evans v. Building Materials Corporation. Councilor Murnane, is that correct? Good morning, yes your honor. Okay, and I see that you reserved four minutes, correct? That's correct, your honor, thank you. Good morning, your honors, and may it please the court. We are here today because the plaintiff Zappellese filed a complaint last year with substantial allegations concerning a promotional agreement between the parties, between my client GAF and the plaintiff Zappellese. As a result of those substantial allegations, the relief that they seek is based on those allegations and therefore arises under the agreement and relates to the performance of the parties under the contract. But the arbitration agreement in this case does not have that relates to phrase you just used. I thought there was quite a lot of law that actually does some meaningful distinguishing between different arbitration clauses, depending in part on whether they just say arising under or arising out of, on the one hand, versus arising under or relating to, on the other hand, and I'm sure there are other formulations too, but this is on the narrow end of that spectrum of language. Thank you, your honor. Yes, it does have the arising under language and as I noted, your honor, these allegations arise under the agreement and the conduct of the parties under the agreement. Did the promotional agreement have any provisions that addressed the transfer of any type of trade secrets or trade design? The agreement says that the GAF information is confidential and that the plaintiffs agreed to maintain the confidentiality of the GAF confidential agreement. The agreement does say that, your honor. There's nothing that goes the other way, though. The specific language does not exist, your honor, go any other way. However, as the plaintiffs note in the complaint, the plaintiffs note that the parties entered into this agreement in 2009 and they entered into this agreement and the whereas clauses say why. The whereas clauses on the first page of the agreement note that the plaintiffs had a roof model, a model that people can use to look at different types of roofs if they're thinking of contemplating a new roof. It also says that my client is involved in roofing manufacturing and distribution and has roofing contractors. So the object of the exercise and the purpose of the agreement, this promotional agreement, was for the plaintiff's roof models to get in the hands of my client's roofing contractors so that people could then look at these particular items. And according to the complaint, the plaintiff's complaint, after entering into the agreement, the plaintiffs then sold roof models to the roofing contractors, went to the GAF convention, and brought promotional materials, and had confidential discussions with GAF where it gave information concerning the product, the making of the product, and the promotion of the product, the sales, the marketing, the promotion of the product. According to the complaint, confidential information was conveyed by the plaintiffs to GAF and they agreed to maintain the confidence. But that understanding is separate from the agreement because the agreement doesn't either specify the exchange of confidential information or obligate Roof and Box to require GAF to maintain that information confidential. The words of the agreement itself don't say that, Your Honor, but the plaintiffs say that after entering into the agreement and the relationship, by the way, the very first page. Are we limited to the actual words of the agreement? It doesn't say that, but are we limited to that? I think, forgive me, Your Honor. Go ahead, sir. We are informed by the agreement and we're also informed by what the plaintiffs say the parties did under the agreement. Section 6D of the agreement is the commitment section. It's on appendix page 28 and it says both Roof and Box and GAF are committed to the mutual benefits to be derived under the program. As a result of that commitment, the plaintiffs say after entering into the agreement, they did those things, including providing confidential information. That's what they say. They say they did that. The reason they say they did that was because after they say they conveyed this information, they say in the next paragraph, 22 of the complaint, they say GAF terminated. And they say following termination, GAF started coming up with its own product. And they say in the subsequent paragraphs in the complaint, GAF used advertising, which was substantially the same as the promotional materials that the plaintiffs say they gave in confidence to GAF. They say that there. And they say it has the same look and feel. And as a result of these allegations, they then say that GAF in their accounts, they say in count four, that GAF has engaged in common law trade dress infringement, engaging in unfair competition by, quote, using plaintiff's confidential information and the fruits of plaintiff's time, labor, and expense to compete with plaintiffs. And they seek punitive damages. Well, that last bit before you got to punitive damages, what count of the complaint is that? Count four, Your Honor. Did you make an argument to the district court that count four should be treated any of the other counts in terms of arbitrability? Not with those specific words, Your Honor. But isn't that a problem? Because I think that you've begun talking about the one piece of the complaint that feels like it might have something to do with this agreement. I'm not entirely sure. But some of the others, the patent infringement, the trademark use, that I have a very hard time seeing how it could even reasonably be asserted that those claims arise under the agreement because there's no obligation of the agreement that is material to the proof or disproof of those claims. If I may, Your Honor, I'll come back to this in a moment. I want to answer your question specifically. With respect to the trade dress claim, okay, we have, and this is common law trade dress, okay, so we didn't use those specific words. But we did deal with it because this is a trade dress claim, count four. Count three is the Lanham Act trade dress claim, the federal Lanham Act trade dress claim. And in both of these claims, they're seeking lost profits. And we did say to the district court, and the district court notes it in the opinion, in seeking lost profits here, in seeking lost profits, what the plaintiffs are really doing is saying, you breached the contract, and we want to be where we were had you not done that. And there's a reason for that. Because the only sales here are the sales to the GAO. But why isn't the lost profits nothing more than a really pretty good source of evidence about what their profits would be? Excellent question, Your Honor. As opposed, but not necessarily connected with connecting the underlying wrong to any breach of the agreement. If this thing happened to be sold earlier under an agreement, that tells you something about what kind of profits you could make. And so later when you commit the violations that they say you committed, that's a pretty good measurement to them of what they could have made if you hadn't done that. Thank you, Your Honor. The reason it's different is, in this instance, this is a very unique instance. That's why I was talking about the agreement. Without this agreement, there were no sales. This agreement was to provide these models to the GAF contractors. The reason Evans made any money at all was he was making these sales to the GAF contractors. But as we've noted, he failed to deliver on time and the product didn't have the quality. Despite requests that he do better, he couldn't. So GAF terminated as provided for in the agreement. GAF terminated and then GAF came up with its own different model, more durable on time and so forth. The sales that he says he lost profits from are the sales, the only sales he could have made under the agreement. He lost sales under the agreement. The GAF stepped into his shoes and did the job. Right, but just to clarify for me, is it any part of their complaint to challenge your termination of the agreement? In the complaint? That's right. No, Your Honor. Yeah, so you legitimately terminated the agreement and now they're suing you for actions taken after that. They're not saying you're making money by having wrongfully terminated the agreement. They're not using those words, Your Honor. They're seeking the same result. And as we've noted in our papers, in our briefs, the law is that the words you use in your allegations should be controlling you, no matter what label, because they will have, if in fact they're permitted to proceed this way, they will be in the same exact situation as if they said breach of contract. Because as I said, the lost profits, which we talked about the district court, and it's for count four as well as for count three, because they're both trade dress, one federal, the other common law. Those profits could only have been made if he was still operating under the contract, because the only sales the GAF made were to its own contractors. Just to follow up on Judge Toronto's question, it seems to me that the promotion agreement is all about the sale of Rufenbach's products and the promotion thereof. The complaint is all about the sale of GAF's products. I don't see any relation between the two at all. The only reason... The contract, the promotion agreement relates to Rufenbach's sales. That was terminated. There's no allegation of any breach relating to the termination. That's over and done with. Now you've got activities that are complained about with regard to GAF's activities. What did GAF sell? Does it infringe the patent? Does that product mislead, misrepresent? Is it unfair competition? I don't see anything in the complaint that connects the two. What am I missing? Everything in the complaint, Your Honor, has been written in order to make this case worth substantial sums. Everything that's been written in this complaint about... There was no need... If one were only... To answer again Judge Toronto's question and your question, Judge Wynn. If this was only about patent infringement, they just have to hold up the design patent drawing, show the GAF product and say, jury. They want a jury over there in the Eastern District of Virginia. Jury, take a look. You know, they've given background information relating to the counts that are set forth in the complaint. But the counts are all specific to GAF's activities. What GAF did, why what they did is wrong and actionable, and why it should be stopped, and what the damages might be. All relating to what they're doing and nothing to do with the sale of any products by roof and box under the promotion agreement or any failure thereof or anything else to do with the promotion agreement. The history is there, of course, with the relationship between the companies. And certainly your arguments might have more gravitas if the arbitration clause was a broader variety, which included not only arising under, but also related to. But the agreement is limited to things that arise under an agreement relating not to GAF sales, but to roof and boxes sales. And isn't that a problem? Your Honor, respectfully, I think it is not. The reason being because what they're seeking here. We've mentioned they're seeking punitive damages in count four. That can only be because of this story with respect to the agreement that they put in there. They say in count five where they have the New Jersey action, the New Jersey, they say the conduct was unconscionable. They say there was misrepresentation. These things all supposedly took place as the parties acted under the promotional agreement. They're seeking here more than a million dollars. How do we know when the alleged misrepresentations took place? Your Honor, it's inferred by the way they've written the paragraphs in the complaint. They write the paragraphs saying that they gave this confidential information. And then they say after we gave the confidential information, GAF terminated. And then the very next paragraph, GAF started competing. And the very next paragraph of the complaint, they say GAF was using promotional materials that had the same look and feel. If you went back two paragraphs above that, they say they taught you how to do the promotion. So everything that they say in order to get the big money that they're seeking here is based on the allegations in the complaint about the agreement. So what happens if we disagree with the position? This goes back to the district court and the trial continues? That would be right, Your Honor. We would respectfully say that here the standard, the standard here is what we're saying wholly groundless. And we believe it's not, Your Honor. Okay. You've run out of your time. I'll restore you three minutes for rebuttal when you get back up, okay? Thank you very much, Your Honor. Thank you. Mr. Stillman. Good morning. May it please the court. I'm here on behalf of the Appellee. Let me say as a preliminary matter that I think, Judge Lynn, you accurately characterized where the parties are separated in this case. This case is about the illegal, we contend, sale of Rufenbrock's, of products that infringe Rufenbrock's patents has nothing to do with this agreement. And in fact, if you go back and you look at the four corners of this agreement, you'll see quite plainly that what this agreement relates to is a promotion of Rufenbrock's products with contractors that have relationships with GAF in this case. And whether one applies the full inquiry test or whether one applies the wholly groundless test, and I think for all intents and purposes, the district court did both. I think you'll see that the case law makes it clear that it's still appropriate for this court to look at and examine and construe the underlying agreement. And that was made clear in the interdigital case, which I might talk about in a moment. But in that case, the court said, even when one does the wholly groundless test, it's still appropriate to look at and examine and construe the underlying agreement. So let's do that. The underlying agreement in this case was an agreement whereby GAF agreed to allow Rufenbrock's to promote its three-dimensional model with its customers. It did not give any permission to GAF, the appellate in this case, to sell Rufenbrock's products. It's merely obligated them to promote those products. And this agreement has nothing to do with that. And in fact, this lawsuit has nothing to do with that. And all of the allegations that are referenced in the complaint are wholly unnecessary. And I actually agree with what counsel has said. They're wholly unnecessary to an allegation of patent infringement. The contract has nothing to do with the claims of patent infringement. And so what they are essentially alleging... Well, I think they've really turned their focus away, this morning at least, away from the patent infringement to the other allegations, whether trade dress or things like that, some of which they say the complaint makes clear enough, have some of roots in the pre-termination relations of the parties. And you asked a very good question. And your question was, did you make any arguments to the district court as to whether or not those trade dress claims should be treated somehow separately or distinct from the patent claims that are alleged in the complaint? And the answer is no. That argument has never been made. There's never been a motion to sever the pendant trade dress state law claims that are asserted in the complaint, along with the complaint for patent infringement. And so that's not an option anymore. There's never been any motion to do that. But even if it were, my answer to your question would be this. Once again, the underlying contract was for GAF to promote the sale of Rufenbach's products. It did not allow them to sell a product which infringed Rufenbach's patents. And that's the distinction. So to suggest that somehow it would be appropriate maybe to sever, which that motion has not been made, or to treat the trade dress claims differently, is wrong for the simple reason that the underlying contract, which as you've correctly pointed out, the arbitration provision says the arbitration only relates to claims arising out of the contract, not relating to the contract. Under. Under. Under. Under the contract, exactly. And in this case, what we've got is a situation where GAF has essentially decided that it wants to market and sell a product which we allege infringed the claims of this patent. It's also worthwhile pointing out, and we've argued this in our brief. Can you focus on the non-patent? So patent infringement is what? Count one, I think? I think that's right. And let's focus on the other counts, not patent infringement, both the federal and the state law trade dress or other unfair competition. So I'm not that concerned about severing state law claims because there are some federal claims that seem to mirror the state law ones. And why aren't those at least closer to what the contract was about? Oh, I would completely agree that they are closer to, they do not arise under. And so if you had an arbitration agreement that would say, that said relating to, perhaps you would have an argument that those claims should be treated differently. Perhaps you would have an argument that those claims should be severed and submitted to arbitration, separate and apart from the underlying patent, from the primary patent claim. But that argument hasn't been made. There's been no motion to do that. And I think the time for doing that is now long since expired. But I would also say that even if that motion were made, I would say to you that it, these claims are wholly separate and distinct from this contract. They did not arise. And this is very important. They did not arise. And the district court made this point in his decision until the contract was terminated. They arose only when the defendant in this case made a decision to start selling products, which we contend infringe the claims of this patent. And so for that reason, and because of the language that's in the arbitration agreement itself and the contract, I would say to you that while I agree that they are closer to what is going on in the contract, they still do not arise under the contract because the contract, as Judge Lynn has pointed out, related to the sale of our products. This complaint relates to the sale of GAF's products. What's the impact of the confidentiality provision that's contained in the agreement? I don't see any impact, Your Honor. I guess for the same reason that I've already argued, and that is the contract itself, again, pertains to the promotion of our products. You know, it may have an impact on the other's claim. Let's say that there was a provision that took the confidentiality the other way, and it applies to both parties to the agreement. Then with this complaint, these allegations arise under the promotional agreement at that point. It's an interesting question. I hadn't thought about it until you posed it. But again, I obviously have to argue no, and the reason why is because, again, the contract pertains to the promotion of our products, not to the sale of theirs. So we're two ships passing in the night here. These claims are wholly unrelated to what this contract was all about. Which was an agreement on the part of the defendant to promote a three-dimensional model for use with their contractors. Just to be clear, do I understand right that the confidentiality provision, paragraph eight of the agreement at appendix 83, runs one way only? That is, they promised that they, I'm sorry, you promised you would keep confidential any of their confidential information, not the other way around. I went back and I looked at that after you asked the question earlier and that's my understanding. That's my understanding. Finally, I do want to point out. But in your complaint, you talked about how in the course of the agreement  your client provided confidential information and there was an expectation that that would be maintained in confidence. Where is that obligation? In the contract? Yes. To be honest with you, it's my recollection that my client told me that they promised that they would do that. I do not believe there is a specific provision that says that in the agreement. But I do believe that there were oral discussions about that. Finally, I would like to remind you that I believe that this court's decision in the interdigital case is very instructive. And because there it was argued that the arbitration clause applied because patents were subject to a licensing agreement. And the district court applied the holy groundless standard and compelled arbitration and this court looked at that and said whether you're doing a full-blown analysis or whether you're applying the holy groundless standard, it's still appropriate to look at the underlying agreement and look at what the underlying agreement says. And I go right back again to Judge Lynn, your point. The underlying agreement was not about their sale of their products, which infringe our patent. It was about the sale of our products. Can I bring you back to this confidentiality business and never mind the written agreement at this point, but the end of paragraph 21 of your complaint, I think, says Evans and GAF agreed that such roof and box and Evans confidential information would be kept confidential by GAF. Assuming for a moment that that sentence is true, what role does it play in your causes of action? Because it's easy enough to attach that, you know, that oral agreement to this written agreement and then say, the complaint says this, there must be there for a reason. So now we seem to be maybe arising under the agreement. I haven't thought about that as much as I should before you've asked the question. As I sit here thinking about it now, the answer is it probably is not relevant, notwithstanding the fact that it's in there. But I don't want to be bound by that because I haven't given it enough thought. But if you ask me. But you're not being bound suggests maybe this is part of the case. Yeah, it's a fair point. But as a practical matter, I can tell you just sitting here standing at the podium, I don't see how it has anything to do with the claim for patent infringement. I mean, whether or not they, I mean, you could draw that conclusion as well as I. Putting aside the state law claims, did either side, did both sides here treat the question of arbitrability as all or nothing, that is covering all the claims or none of the claims? Or was there ever anything on the table or argued should be on the table about some claims go to arbitration and others not? No, and more importantly, and it's a point that we make in our brief, I need to remind you of this. Mr. Evans is not even the party to that agreement. So to suggest that that. There was some meeting of the minds about that, I think is just unsupported by the evidence. But no, I'm not. I have to answer. Does the law relevant law tell us anything about what we should do if we concluded that one of these claims arises under the agreement, but the other four don't? No, I have not seen. I have not seen. Look, I got to believe that an article three judge, if he wanted to, he or she wanted to could in their discretion make a judgment to several claims that they thought to be subjected to an arbitration provision. I have to believe that a judge has the ability to do that. Have I seen a case in which that's done? I have not. And I have looked, but I have not seen one. And more importantly, for the reasons that I've articulated, I don't think it would be appropriate because this lawsuit doesn't arise under that contract. I'm begging the underlying argument. I understand. But and to answer your question as to whether I've seen cases that would allow an article three or encourage an article three judge to treat those claims differently, I have to believe they have the power to do that. No further questions. We would ask the court to affirm the findings of the district court in this case. Thank you very much. Thank you again, Your Honors. A few brief points. Again, I'd like to reiterate what we have in our papers that the standard here for this analysis is the factual allegations in the pleading are of primary importance here. And as has been noted in the exchange between plaintiff's appellant, plaintiff's appellees counsel in the court, we have significant allegations here in the complaint. One point that was made was the activity that's now complained of arose after the termination. But our point, our response to that is, then why tell the jury all of this? There's a reason for it. There's a reason for saying this is what happened under the agreement. GAF has behaved unconscionably. GAF has behaved with malice. You must give us punitive damages. There's a reason for them bringing that in because without those allegations, it's a garden variety case and it's not worth much because there weren't many sales and GAF didn't make any profits. And they're seeking lost profits here, punitive damages, severe relief against GAF. Mr. Mernan, let me ask you the same question that Judge Serrato asked your adversary and that is the statement in paragraph 21 of the complaint that Evans and GAF agreed that such roof and box and Evans' confidential information would be kept confidential by GAF. How does that relate, if at all, to the specific counts set forth in the complaint? And let's ignore patent infringement for the moment because I don't think it relates to that at all. So we're talking about counts three, four, and five. Thank you, Your Honor. It's the basis. It's the basis. What they say there, paragraph 20 before the antecedent and then paragraph 21, we had a promotional agreement relationship and pursuant to that relationship, there was a confidentiality requirement. And they're saying GAF breached it. We disagree. They say GAF breached it and that's the basis. They're saying that confidential information taught you what to do and how to do it and then you did it. Where in those counts do they say that that confidentiality was breached? In, if I may, Your Honor, in the complaint we look at appendix 33, page nine of the complaint, paragraph 66. Defendant has violated plaintiff's common law trade dress rights and otherwise engaged in unfair competition with plaintiffs under the laws of the Commonwealth of Virginia and other applicable state laws such as Texas and New Jersey, including by using plaintiff's confidential information and the fruits of plaintiff's time, labor, and expense to compete with plaintiffs. And the antecedent for that is the paragraph Your Honor noted in that before and after it. And then in the next count on appendix 34, they cite the New Jersey statute which talks about unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, with the intent others would rely on it, in connection with the sale of any merchandise. So clearly this narrative that they have in the complaint is there for a purpose. The narrative is there so that they can get from the garden variety design patent infringement case to the big opportunity for money here. Punitive damages, treble damages, lost profits, and even with respect to the patents Your Honor, even with respect to the patent claims, exceptional case. With these allegations in this complaint, we are confident they want to tell the jury. They did all that. That's why this case is exceptional and that's why the patent damages should be what they are. They should be treble. That's why you should grant attorney's fees because it's an exceptional case because of the stuff they did under the agreement. It's all tied together. Okay, we thank you for your arguments and that's the conclusion of today's arguments. This court now stands to recess. Thank you very much Your Honor.